# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2059-17T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

V.M.,

 Defendant-Appellant,

and

F.G.,

 Defendant.

_____

IN THE MATTER OF J.G.M., a Minor.

_____

Submitted September 20, 2018 – Decided October 19, 2018

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0165-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Carol M. Willner, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Amanda D. Barba, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant V.M. appeals from an April 15, 2016 fact-finding order that she and F.G.[1] neglected their sixteen-month-old son, Jamie.[2] See N.J.S.A. 9:6-8.21(c). Because we agree with the Division of Child Protection and Permanency, as well as the Law Guardian, that there is substantial credible evidence in the record to support the trial judge's finding of neglect, we affirm.

The Division brought this action contending V.M. and F.G. neglected their son by failing to provide him with adequate shelter and dealing drugs from their

---

[1] F.G. has not appealed from the order.

[2] This is a fictitious name we use to guard the child's privacy.

home, thereby failing to exercise a minimum degree of care. The complaint was precipitated by the Hudson County narcotics task force executing a search warrant for the home F.G. shared with V.M. and Jamie. Besides finding drug paraphernalia, a digital scale, small quantities of narcotics and $300 cash, the officers found cockroaches crawling everywhere in the apartment, including in the dirty sheets on the bed where Jamie was sleeping. After police arrested F.G. and V.M., the Division executed an emergency removal of Jamie.

On the return date of the Division's order to show cause, Judge Santiago inquired as to whether this was defendants' first dealings with the Division. Upon being advised it was, the judge addressed both young parents directly, saying:

> [L]isten carefully. And I just want to make sure you understand, the Division is doing their job. It is my job to make sure they do it well. But the fact that the child has been removed and they brought the case to this court with the allegations that were made they did exactly what they needed to do. So instead of being upset at the removal of the child, we need to pay careful attention to the services that are being offered, so that we can change the situation so that this court is put in a position of being able to return this child to you, but to a safe environment.
>
> I don't take kindly, assuming the allegations are true, to that kind of activity going on in any home where there's a child, assuming they're true. What I am saying, though, anyone who tests positive for drugs

3

from here on in is not going to have a fair viewing by me, fair in terms of thinking it's safe. And I'm just saying that because there's an opportunity here to make it better.

So today is a good day because everyone is on notice that this child, this one year old child, needs to be protected. And you're the only ones that can offer that protection. And it is your responsibility to get us out of your lives. Okay?

At the fact-finding hearing several months later, the Division presented the testimony of two of the officers who searched defendants' home. They described the condition of the apartment as "deplorable." They claimed it reeked from dirty dishes and mounds of unwashed laundry, and that roaches flew at them when they opened cabinets and drawers in the course of executing the warrant. The officers testified there were roaches everywhere, including in the refrigerator where the baby's food was sealed in plastic bags and in the dirty clothes in Jamie's baby bag. They estimated there were a dozen cockroaches where Jamie lay on an unmade bed on dirty sheets. In the police report admitted into evidence, the officers opined that V.M., who was alone in the apartment when the police executed the search warrant, tossed from an open window the drugs they found outside while they waited for her to open the door. The judge sustained V.M.'s objection to that testimony as speculative at the hearing. Defendants did not testify in their own behalf and called no witnesses.

A-2059-17T1

After weighing the evidence and the arguments of counsel, Judge Santiago entered an order finding V.M. and F.G. had neglected their infant son. In a clear and comprehensive written decision, she summarized the critical testimony, identified the pertinent law and explained its application to the facts as she found them. Judge Santiago did not find the Division's evidence sufficient "to establish that the home was used as a base for drug operations," although acknowledging "there is competent reliable evidence that there is drug activity within the home" which "certainly poses a risk of harm to the child." The judge found that F.G.'s "participation in drug transactions" evidenced by three controlled buys, and V.M.'s "use of marijuana is a direct risk of harm to the child and constitutes a failure to exercise a minimum degree of care."

The judge also found defendants neglected Jamie "by failing to take steps to ameliorate the infestation of roaches in their home." She explained that

> [w]hile a roach infestation can easily occur in any highly populated area, the conditions testified to such as odor from dirty dishes, roaches inside the refrigerator, roach feces all over the ceiling and walls and around the table as well, all point to conditions that have existed for a period of time. Of even greater concern is the potential harm to the child. [Jamie] was found lying on the bed surrounded by at least a dozen roaches, there were roaches found in his baby bag on his clothing and on his baby's food in the refrigerator and in the cabinets. This child is incapable of protecting himself from the harm of crawling roaches

that surrounded him while lying on the bed. The child had no crib and was found resting on dirty sheets. Such conditions cannot be associated with poverty but rather to neglect and lack of attention.

On appeal, V.M. contends for the first time that the judge should have recused herself "because of the prejudicial nature of [her] comments at the show cause hearing" and that her opinion "relies upon judicial assumptions and filling in of missing information unsupported by adequate, substantial and credible evidence." We find her first argument frivolous and the second utterly without merit. See R. 2:11-3(e)(1)(E).

A review of the comments V.M. complains of, which we quoted above, reveals, not bias, but only admirable concern for V.M. and her young family. At the time those comments were made, V.M. and F.G. had been arrested and charged with a host of narcotics offenses, Jamie had been removed from their care and placed with a non-relative resource parent and V.M. had already tested positive for marijuana. She did not have a job and lacked any stable housing. Judge Santiago provided both sound advice regarding V.M.'s need to put aside her anger at the Division for taking her child and to focus instead on taking advantage of the services it would offer to correct the conditions leading to Jamie's removal and a warning that the judge would view continued drug use as a danger to such a young child, which would make reunification very difficult.

A-2059-17T1

Having scoured the record, we find not the slightest hint of bias in any of the court's comments or rulings. The judge patiently heard the testimony and was scrupulously careful to protect defendants' rights, ruling several times in favor of defendants and against the State on evidentiary questions at the fact-finding hearing. Judge Santiago's findings, particularly those related to the filthy, roach-infested apartment in which F.G. and V.M. forced the baby to live, were meticulous and well supported by the evidence in the record. They readily support her conclusion that V.M. and F.G. failed to exercise a minimum degree of care for Jamie by failing to provide him with adequate shelter.

Accordingly, we affirm substantially for the reasons expressed by Judge Santiago in her thorough and thoughtful written opinion of April 15, 2016.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2059-17T1